NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DAVID FRANCISCO, et al., *Plaintiffs/Appellants*,

*v.*

AFFILIATED UROLOGISTS LTD, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0701
FILED 5-23-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2020-010470
The Honorable James D. Smith, Judge (Retired)

**REVERSED AND REMANDED**

---

COUNSEL

Kelly & Lyons, PLLC, Scottsdale
By Jason M. Kelly, Richard D. Lyons
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Eileen Dennis GilBride, Cristina M. Chait, Anne E. Holmgren
*Counsel for Defendants/Appellees*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Amicus Curiae Arizona Association for Justice/Arizona Trial
Lawyers Association*

---

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins[1] joined.

---

**C R U Z**, Judge:

**¶1**     David Francisco and his wife, Kimberley Francisco, appeal the superior court's dismissal with prejudice of their medical negligence claim against Kevin Art, M.D. ("Dr. Art") and Affiliated Urologists, Ltd. (collectively, "the Practice") based on non-compliance with Arizona Revised Statutes ("A.R.S.") section 12-2603.  We reverse and remand for further proceedings consistent with this decision.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**     The Franciscos filed a lawsuit against the Practice alleging medical negligence.[2]  The Franciscos alleged Dr. Art failed to inform David of the potential risks of taking ciprofloxacin ("Cipro"), a drug Dr. Art prescribed for David following a 2018 urological procedure.  The Franciscos allege David had a reaction to Cipro that caused him permanent pain and injury.  The Franciscos asserted that, had Dr. Art offered adequate information or prescribed a reasonable alternative, David would have requested a different antibiotic.

**¶3**     The Franciscos certified that expert witness testimony was not necessary to prove the applicable standard of care and liability.  The Practice filed a motion to compel a preliminary expert opinion affidavit

---

[1]     Judge Jennifer M. Perkins replaced Judge Peter B. Swann, who was originally assigned to this panel but has since retired.  Judge Perkins has read the briefs, watched the recorded oral argument, and reviewed the record.

[2]     In their complaint, the Franciscos alleged three causes of action: lack of informed consent, negligence, and negligence per se.  All three claims are premised on the Franciscos' allegation that Dr. Art failed to warn or inform David of the increased risk of harm based on the FDA warnings and David's particular patient profile.  The Franciscos do not raise any issue regarding their negligence per se claim, and thus it is waived.  *See Ramos v. Nichols*, 252 Ariz. 519, 523, ¶ 11 (App. 2022).

required under A.R.S. § 12-2603(D). In response, the Franciscos argued that, as recently as 2016, the Food and Drug Administration ("FDA") warned in its Cipro medication insert that Cipro can cause "disabling and potentially irreversible serious adverse reactions," and instructed doctors prescribing Cipro to use caution "when prescribing CIPRO to elderly patients especially those on corticosteroids," to inform patients of this potential adverse reaction, and to give instructions "to discontinue CIPRO use and contact their healthcare provider if any symptoms of tendinitis or tendon rupture occur." At the time of the surgery, David was 66 years old and had been taking corticosteroids for about 40 years. The Franciscos argued jurors could decide for themselves whether the FDA warnings would have been material to David's decision-making process, and the FDA warnings at issue did not require experts for the jury to understand them. Ultimately, the Franciscos conceded they were unable to find an expert to provide a preliminary expert opinion affidavit. The superior court granted the Practice's motion to compel a preliminary expert opinion affidavit as to the claims of negligent prescription of Cipro and failure to inform of the risks of taking the drug, as well as denied the Franciscos' motion for reconsideration.

**¶4** The Practice moved to dismiss pursuant to A.R.S. § 12-2603(F). The superior court granted the motion and entered final judgment dismissing the case with prejudice. The Franciscos timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶5** The Franciscos argue the superior court erred in requiring a preliminary expert opinion affidavit as to their lack of informed consent claim and in dismissing the same. We review an order requiring a preliminary expert opinion affidavit under A.R.S. § 12-2603 for abuse of discretion. *See Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 128, ¶ 14 (App. 2008) (reasoning that the abuse of discretion standard should apply to the superior court's decision whether expert testimony is required under A.R.S. § 12-2602, the companion statute to A.R.S. § 12-2603, because the determination at trial of areas of expert testimony is discretionary).

**¶6** The Franciscos argue that A.R.S. § 12-2603 only applies to medical malpractice claims and that, because a lack of informed consent claim is not a medical malpractice claim, expert testimony is not required. As relevant here, a "claim" for purposes of § 12-2603 means a legal cause of action under the Medical Malpractice Act, A.R.S. §§ 12-561 through 12-563, when "[t]he claim is based on the health care professional's alleged breach

of contract, negligence, misconduct, errors or omission in rendering professional services," and when expert testimony is necessary to prove the standard of care or liability.  A.R.S. § 12-2603(H).

¶7            It is undisputed that the Franciscos alleged a medical negligence action against healthcare provider Dr. Art for lack of informed consent.  A lack of informed consent claim is a negligence action.  *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309-10, ¶¶ 11-13 (2003) (lack of informed consent claim involves the physician's duty to inform the patient of inherent risks in surgery or treatment to which he has consented and should be pled in negligence); *Rice v. Brakel*, 233 Ariz. 140, 144, ¶ 12 (App. 2013) (duty to disclose relevant risks exists under the informed consent theory of medical malpractice); *Gorney v. Meaney*, 214 Ariz. 226, 230, ¶ 11 (App. 2007) (lack of informed consent claim falls within definition of claim for medical malpractice); *Gurr v. Willcut*, 146 Ariz. 575, 581 (App. 1985) (same).  Moreover, this court has expressly rejected the argument that A.R.S. § 12-2603 excepts lack of informed consent claims from its reach. *Gorney*, 214 Ariz. at 230, ¶ 9.

¶8            The Franciscos next argue expert testimony is not necessary to prove their lack of informed consent claims given the particularized FDA warnings and David's medical history.  The Arizona Supreme Court has made clear that the medical profession's custom to warn must usually be established by expert medical testimony and depends "upon the circumstances of the particular case."  *Riedisser v. Nelson*, 111 Ariz. 542, 544-45 (1975) (citation omitted); *see also Potter v. H. Kern Wisner, M.D., P.C.*, 170 Ariz. 331, 333 (App. 1991); *Seisinger v. Siebel*, 220 Ariz. 85, 95, ¶ 39 (2009) ("[E]xpert testimony is *usually* required to establish the standard of care.") (emphasis added) (citation omitted).  But evidence of custom, while usually important, is not determinative in all cases; there is no legal rule requiring that expert testimony *always* exist to define the standard of care.  Notably, § 12-2603(A) requires a plaintiff to file a written statement as to "*whether or not* expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim."   (Emphasis added.)

¶9            Here, relying on *Riedisser*, the superior court held that Dr. Art's possible duty to warn of a specific risk hinged on medical knowledge. 111 Ariz. at 545.  But *Riedisser* is distinguishable.  In that case, the plaintiff suffered a rare, adverse result after undergoing a hysterectomy for which she gave her informed consent.  *Id.* at 543-44.  Medical knowledge was necessary to explain to the jury whether the physician breached his duty of disclosure in failing to inform her of the unlikely possibility of the rare complication she experienced.  *Id.* at 544-45.  The court reasoned that

because Ms. Riedisser gave her informed consent, any liability of the physician must be from malpractice and must be measured by the usual practices of the medical profession. *Id.* In other words, a medical expert would be required to explain to the jury the standard of disclosure for that surgical procedure within the medical community.

**¶10** As *Riedisser* notes, the duty to warn of a specific risk depends "upon the circumstances of the particular case and upon the general practice followed by the medical profession," and "[t]here is . . . no clear rule as to what information must be disclosed in what circumstances; medical judgment is primarily involved." *Id.* (citation omitted).

**¶11** Custom alone is not the standard. All relevant circumstances should be considered, including whether the FDA has specified in a medication's package insert that the prescriber should give a warning. *Cf. Rodriguez v. Jackson*, 118 Ariz. 13, 18 (App. 1977) (recognizing that although a package insert is not conclusive evidence of the standard of care, it is admissible into evidence).

**¶12** The absence of expert testimony on the custom of the medical profession does not mandate dismissal under § 12-2603 when, as here, the FDA directs physicians to advise patients of all risks associated with prescribed medications, provides physicians with a specific "black box" warning, and the physician does not advise the patient of the specific warning  Here, specialized knowledge is not needed to evaluate whether the FDA instructed the doctor to give certain warnings to patients. The Franciscos should be permitted to present evidence that the FDA warnings for Cipro directed prescribers to inform their patients of the potential adverse reaction and give them instructions for further follow up. Should the Practice wish to offer responsive expert testimony that physicians are free to ignore such a directive, it may do so. In such circumstances, a layperson is well able to determine whether, in the context of all evidence from both sides, the failure to warn constituted negligence.

**CONCLUSION**

**¶13**        We reverse and remand for further proceedings consistent with this decision.  The Franciscos are awarded their costs on appeal, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA